UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PAUL REID,                          :
                                    :   Civil Action No. 11-4048 (JLL)
            Petitioner,             :
                                    :
      v.                            :   **OPINION**
                                    :
GREG BARTKOWSKI, et al.,            :
                                    :
            Respondents.            :


**APPEARANCES:**

**PAUL REID,** Petitioner pro se
SBI # 830759C/5
New Jersey State Prison
P.O. Box 861
Trenton, N.J. 08625

**STEPHANIE PAIGE DAVIS-ELSON,** Counsel for Respondents
Hudson County Prosecutor's Office
595 Newark Avenue
Jersey City, NJ 07306


**LINARES,** District Judge

    Petitioner Paul Reid ("Petitioner"), a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Greg Bartkowski and Paula Dow.  For the reasons stated below, the Petition will be denied.

**I. BACKGROUND**

    The facts of this case were recounted below and this Court, affording the state court's factual determinations the

appropriate deference, see 28 U.S.C. § 2254(e)(1)[1], will simply reproduce the recitation as set forth in the unpublished opinion of the Superior Court of New Jersey, Appellate Division:

> Defendant and one of his co-defendants, Tariq Maqbool, were involved in the sale of cellular telephones and prepaid calling cards at a discount. Jawad "Jay" Mir was the roommate of Amit "Andy" Vishal, who was involved in the same business.
>
> With the assistance of Mir and Vishal, defendant and Maqbool arranged for the sale of a large number of prepaid calling cards and cellular telephones, purportedly at a steep discount, to Joong "John" Ahn and Mun "Mike" Ahn. The buyers arrived at the location where the sale was to take place, carrying with them a substantial amount of cash that they had brought in order to consummate the deal. Because they had been involved in bringing the parties together, Mir and Vishal were also there to help finalize the transaction. However, defendant, Maqbool and two other co-defendants, Zaid Tariq and Steven Reid, overpowered the buyers, and also overpowered Mir and Vishal.
>
> The four co-defendants bound the four others with duct tape and took the money that the buyers had brought with them for the purchase. Defendant and the three co-defendants then forced Mir and Vishal to assist them in taking Joong Ahn and Mun Ahn from the location where the transaction was to have taken place and to drive them to a remote location. Mir and Vishal were later left in a motel room and were eventually permitted to leave. The two Ahns were killed, and their bodies were left in a vehicle that was set afire in a bus

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

> company's parking lot. The medical examiner
> determined that one died from strangulation
> and one from blunt trauma to the brain and
> smoke inhalation.

State v. Reid, 2005 WL 3747511, at * 1 (N.J. Super. Ct. App. Div.

February 09, 2006). Following a jury trial, Petitioner was found

guilty of two counts of felony murder, N.J.S.A. 2C:11-3a(3), one

count of first-degree kidnapping, N.J.S.A. 2C:13-1b, and one count

of second-degree armed robbery, N.J.S.A. 2C:15-1. Id. The jury

acquitted him of two counts of murder, N.J.S.A. 2C:11-3a(1); 3a(2),

but found him guilty of two lesser included charges of aggravated

manslaughter, N.J.S.A. 2C:11-4a. Id. The jury acquitted him of

two additional counts of first-degree kidnapping, but found him

guilty of two lesser included charges of third-degree criminal

restraint, N.J.S.A. 2C:13-2a. Id. The jury also acquitted

Petitioner of an additional count of aggravated assault, N.J.S.A.

2C:12-1b(4), and acquitted him of unlawful possession of a weapon,

N.J.S.A. 2C:39-5b, possession of a weapon for an unlawful purpose,

N.J.S.A. 2C:39-4a, and conspiracy to commit robbery, N.J.S.A.

2C:5-2. Id.

Petitioner was sentenced to consecutive thirty-year terms of

imprisonment on each of the felony murder counts, to be served

without parole, and to two concurrent five-year terms of

imprisonment for the two criminal restraint counts, with all other

counts being merged into the felony murder counts for sentencing

purposes. Id.

3

Petitioner filed an appeal and on February 9, 2006, the Appellate Division upheld his conviction and sentence. Id. Thereafter, the New Jersey Supreme Court denied certification. State v. Reid, 902 A.2d 1237 (N.J. July 19, 2006). On November 20, 2006, Petitioner filed a petition for post-conviction relief ("PCR"). (Resp't's Br., Ex. 16, Pet'r's Pro Se PCR Mem.)  On December 14, 2007, the state court entered an opinion and order denying PCR. (Id. at Exs. 66-67.) Petitioner appealed and on July 9, 2010, the Appellate Division affirmed the decision of the lower court. State v. Reid, 2010 WL 4054277 (N.J. Super. Ct. App. Div. July 09, 2010). Petitioner filed a petition for certification which was denied by the New Jersey Supreme Court on January 7, 2011. State v. Reid, 12 A.3d 209 (N.J. January 07, 2011).

Thereafter, Petitioner filed the instant petition with this Court. (Docket Entry No. 1.) He raises the following grounds:

> 1. The state court's ruling that trial counsel's dual representation was not a conflict of interest, and counsel was not ineffective was contrary to clearly established federal law and United States Supreme Court precedence under ineffective assistance of counsel violated Petitioner's rights under U.S. Const. Amend Sixth and Fourteenth.
>
> 2. Trial counsel's failure to object and move to have the juror who claims that he was threaten [sic] by Petitioner's brother along with the juror whom he shared this information with dismissed and replaced, was ineffective assistance of counsel. Counsel's actions were contrary to the United States Supreme Court ruling in Strickland v. Washington and clearly

4

established federal law.

3. The state court's ruling that the state did not violate a rule of law adopted in <u>State v. A.G.D.</u>, 178 N.J. 56 (2003), grounded in the United States Constitution, was contrary to clearly established federal law, and an unreasonable application thereof, as well as an unreasonable determination in light of the evidence presented violating Petitioner's Fifth and Sixth Amendment [sic] of the United States Constitution.

4. Petitioner contends that his conviction should be vacated as the trial court's instruction to the jury on the theory of accomplice liability did not enunciate the shared intent requirement, nor did the trial court adequately repeat the charge of accomplice liability in the content of the lesser included offenses. Trial counsel's failure to object to trial court's erroneous instructions on accomplice liability was ineffective assistance of counsel, and rendered Petitioner's trial fundamentally unfair in violation of his right to a fair trial and due process under the United States Constitution Amendments Fifth, Sixth and Fourteenth.

5. Trial and appellate counsels failure to protect Petitioner's constitutional rights to due process of law and a fair trial when they failed to challenge and/or argue that Petitioner was illegally arrested and that the subsequent alleged consent to search was fruits of said illegal arrest was ineffective assistance of counsel, contrary to clearly established federal law, or an unreasonable application of federal law, or an unreasonable application of federal law and so is not procedurally barred, therefore a writ should issue.

6. The conviction was obtained and/or sentence imposed in violation of the Fifth and Fourteenth Amendment to the Constitution of the United States, the right to a fair trial

free from prosecutorial misconduct.  A.) The
record overwhelmingly establishes that the
state regularly vouched for the credibility of
its witnesses, and stated numerous time [sic]
that Petitioner was a liar.  Using perjured
testimony to secure Petitioner's convictions.
B.) Detective Diaz's testimony before the
grand jury, and the petit jury was false.  C.)
The false testimony renders Petitioner's trial
fundamentally unfair requiring that a new
trial be granted.   D.) The need for an
evidentiary hearing is warranted here.

7.  The state court's ruling that appellate
counsel's failure to raise any of the issues
mounted herein on direct appeal, and to
adequately consult with Petitioner prior to
submitting Petitioner's brief was not
ineffective assistance of counsel, was
contrary to the United States Supreme Court
ruling in <u>Strickland v. Washington</u> and clearly
established federal law.  Therefore, the writ
should issue.   (B). PCR counsel was
ineffective for failing to secure an affidavit
or certification to support a deposition taken
from a witness by a state investigator from
the public defender's office.

(Pet., Docket Entry No. 1.)  Respondents filed an answer,

arguing that Petitioner is not entitled to habeas relief.

(Docket Entry No. 10.)  Petitioner did not submit a reply.

## II. DISCUSSION

## A. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 now provides, in

pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit
judge, or a district court shall entertain an application
for a writ of habeas corpus in behalf of a person in

custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

...

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding....

28 U.S.C. § 2254.

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from

7

[the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09.

To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999). Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 312 F.3d 597, 606 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000); Purnell v. Hendricks, 2000 WL 1523144, *6 n. 4 (D.N.J. 2000). In such instances, "the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA." Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001) (citing McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999)). "However, § 2254(e)(1) still mandates that the

state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence." Appel, 250 F.3d at 210.

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

**B. Analysis**

**1. Ineffective Assistance of Counsel**

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right ... to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. See Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. See Strickland, 466 U.S. at 687. First, the defendant must "show that counsel's representation

9

fell below an objective standard of reasonableness."  <u>Id.</u> at
687-88.  "[C]ounsel should be 'strongly presumed to have rendered
adequate assistance and made all significant decisions in the
exercise of reasonable professional judgment.'"  <u>Cullen v.
Pinholster</u>, 131 S.Ct. 1388, 1403 (2011)(citing <u>Strickland</u>, 466
U.S. at 690, 104 S.Ct. 2052).  "To overcome that presumption, a
defendant must show that counsel failed to act 'reasonabl[y]
considering all the circumstances.'"  <u>Id.</u> (citing <u>Strickland</u>, 466
U.S. at 688).

Further, a "convicted defendant making a claim of
ineffective assistance must identify the acts or omissions of
counsel that are alleged not to have been the result of
reasonable professional judgment."  <u>Id.</u> at 690.  The court must
then determine whether, in light of all the circumstances at the
time, the identified errors were so serious that they were
outside the wide range of professionally competent assistance.
<u>Id.</u>

To satisfy the prejudice prong, the defendant must show that
"there is a reasonable probability that, absent the errors, the
factfinder would have had a reasonable doubt respecting guilt."
<u>Id.</u> at 695.  "It is not enough 'to show that the errors had some
conceivable effect on the outcome of the proceeding'...Counsel's
errors must be 'so serious as to deprive the defendant of a fair
trial, a trial whose result is reliable.'"  <u>Harrington v. Richter</u>,

131 S.Ct. 770, 788 (2011)(citing Strickland, 466 U.S. at 687, 104

S.Ct. 2052).  As the Supreme Court explained,

> In making this determination, a court hearing
> an ineffectiveness claim must consider the
> totality of the evidence before the judge or
> jury. Some of the factual findings will have
> been unaffected by the errors, and factual
> findings that were affected will have been
> affected in different ways. Some errors will
> have had a pervasive effect on the inferences
> to be drawn from the evidence, altering the
> entire evidentiary picture, and some will have
> had an isolated, trivial effect. Moreover, a
> verdict or conclusion only weakly supported by
> the record is more likely to have been
> affected by errors than one with overwhelming
> record support. Taking the unaffected findings
> as a given, and taking due account of the
> effect of the errors on the remaining
> findings, a court making the prejudice inquiry
> must ask if the defendant has met the burden
> of showing that the decision reached would
> reasonably likely have been different absent
> the errors.

Strickland, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address

both components of an ineffective assistance claim "if the

defendant makes an insufficient showing on one." Strickland, 466

U.S. at 697.  "If it is easier to dispose of an ineffectiveness

claim on the ground of lack of sufficient prejudice, which we

expect will often be so, that course should be followed."  Id.

a.  **Ground One**

In Ground One, Petitioner argues that the state court erred

when it failed to find that his trial counsel was ineffective for

11

not informing him that he was also representing Efrain Diaz, the arresting officer. Petitioner raised this issue in his PCR petition. The state court denied his claim:

> In this matter, Petitioner alleges he received ineffective assistance of counsel due to the fact that counsel had a concurrent conflict of interest, specifically that trial counsel represented both Petitioner and Detective Efrain Diaz. The record, however, indicates no such conflict and is devoid of any suggestion of dual representation. Petitioner argues that his sister became aware of the dual representation, confronted trial counsel about it, and counsel failed to disclose the nature of the representation. Thereafter, counsel asked whether petitioner had a problem with him representing Mr. Diaz. Petitioner admits he replied that he did not have an issue with this. As an explanation to his response, petitioner states that he felt too invested with trial counsel at that stage of the proceedings to withdraw, however, fails to provide facts sufficient to support their claim. At no time did petitioner include affidavits or certifications of said statements.
>
> Moreover, petitioner's argument fails under the Strickland test. Applying the first prong, petitioner has not demonstrated that counsel's representation deviated from the standard norm or failed to act as a "reasonable professional." In order to establish a prima facie case, evidence must be submitted in the form of an affidavit or certification by someone who possesses first hand knowledge of the statements attested thereto. State v. Cummings. As noted above, no affidavits or certification were provided to the court indicating such by petitioner. Therefore, petition has failed to satisfy the first prong of the Strickland test and cannot make a prima facie showing of ineffective counsel.

> The State, however, has submitted a
> supplemental brief which includes a
> certification by Efrain Diaz whereby he
> certifies that he has never been represented
> by Anthony Peduto, Esq. or Genesis Peduto
> Esq., nor has any member of his family,
> friends, or co-workers. In light of this
> information, clearly petitioner has failed to
> make a prima facie claim because he has failed
> to provide the requisite evidence needed to
> sustain a claim of ineffective assistance of
> counsel.

(Resp't's Br., Ex. 67, PCR Opinion 7-8.)

The Appellate Division affirmed that holding, stating:

> Additionally, defendant asserts that an
> evidentiary hearing should have been conducted
> so that Peduto could have testified regarding
> his alleged representation of Diaz.
> Essentially, other than the unembellished
> assertion that defendant established a prima
> facie case which warranted an evidentiary
> hearing, no specific evidence has been brought
> to our attention which required it. More is
> necessary. Given Diaz's certification, and the
> court's reliance upon it, defendant simply did
> not present a prima facie case of ineffective
> assistance of counsel. Therefore, no
> evidentiary hearing was required. See State v.
> Preciose, 129 N.J. 451, 462-63, 609 A.2d 1280
> (1992); State v. Cummings, 321 N.J.Super. 154,
> 169-70, 728 A.2d 307 (App.Div. 1999) (citation
> omitted). The motion judge's decision not to
> grant an evidentiary hearing is therefore also
> affirmed.

State v. Reid, 2010 WL 4054277, at *2 (N.J. Super. Ct. App.

Div. July 09, 2010).

The foregoing shows that the New Jersey courts reasonably

applied the Supreme Court's holding in Strickland and its

progeny. Petitioner has demonstrated neither that counsel's

performance was deficient, nor that the results of the trial would have been different.  Specifically, the New Jersey courts found that Petitioner had not provided sufficient support for his contention that trial counsel represented both Mr. Diaz and him and as such, failed to meet the first prong of <u>Strickland</u>.  The Appellate Division agreed.  This Court finds that the state courts' holdings did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Therefore, habeas relief is denied on this ground.

**b.  Ground Two**

In Ground Two of the petition, Petitioner argues that his trial counsel failed to move to have two jurors removed from the jury after it was discovered that one of the jurors was allegedly threatened by an individual who claimed to be Petitioner's brother.  The juror who was approached told another juror about the incident.  Petitioner alleges that trial counsel was ineffective for failing to request that these two jurors be removed.

Petitioner raised this issue in his PCR petition.  The court denied that claim:

> In the case at bar, Petitioner argues that the
> jury was tainted, the result of which lead to

14

an impartial jury and that trial counsel, the Court, and appellate counsel alike failed to meaningfully pursue this issue. The taint stemmed from an incident involving jury number three who was approached by a man claiming to be defendant's brother and stated "my brother is not a killer." However, it has been determined that defendant's brother, as a matter of fact, was not present in the court room during this alleged incident. The Court spoke to the juror in confidence, outside the presence of the remaining jurors to ensure that juror number three would not be adversely affected concerning his ability to serve as a juror. Juror twelve also inquired as to the identity of the man who purported to be the brother of the defendant which prompted the Court to similarly ensure that said juror would not be affected as to his duty to be an impartial juror.

As mentioned above, R. 3:22-4 applies to this claim which results in barring the claim from being heard at this juncture. Clearly this claim could have been raised within the prescribed time limitation provided under this rule, failure to do so will not place petitioner within one of the enumerated exceptions absent a showing of an unconstitutional result. As such, Petitioner has clearly failed to make a showing of an unconstitutional result because the Court took proper measures to protect the integrity and impartiality of the jurors by addressing the issue in the presence of the counsel and determined no taint existed.

(Resp't's Br., Ex. 67, PCR Opinion 19-20.)

As found by the state court, the Court took proper measures to ensure the integrity and impartiality of the jurors in the presence of counsel. The court questioned the two jurors who were aware of the comments and the court was satisfied that the jurors were able to remain impartial. As such, it was

reasonable for counsel not to move to have the two jurors removed.  Morever, Petitioner has not shown any prejudice and as such, he has not established either prong of the Strickland standard.  Petitioner has failed to show that the state courts' holdings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law or that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Therefore, habeas relief is denied on this ground.

**c.  Ground Five**

In Ground Five, Petitioner alleges that counsel's failure to argue that Petitioner was illegally arrested and as such, the consent to the search was "fruits of said illegal arrest," was ineffective assistance of counsel.  The state court denied him relief, finding:

> Petitioner argues that his arrest was illegal because the police failed to inform him of the charges against him and the issuance of an arrest warrant before arresting petitioner. Petitioner further contends that the police's conduct resulted in an illegal arrest and the subsequent evidence acquired was tainted as a fruit of the poisonous tree.  It is important to note that the merits of this claim were already heard by the Appellate Division, nonetheless, Petitioners [sic] advances this claim again despite already being adjudicated at the appellate level.  In fact, petitioner's argument is based largely on the same case law that was considered by the Appellate Division.
>
> R. 3:22-5 bars assertion of grounds previously adjudicated.  Petitioner, undeterred by

16

> procedural bars, premises his argument under
> the ineffective assistance of counsel again in
> an attempt to circumvent the procedural bar.
> Specifically, he states that had he been given
> the opportunity to testify at the suppression
> motion, the results of the motion would have
> been different.  This assertion, however, is
> speculative at best unless petitioner makes a
> prima facie showing supported by a factual
> basis and satisfies the burdens of the
> Strickland test.  In this case, petitioner has
> failed to do so, thus the Court cannot grant
> the relief sought.  Further, R. 3:22-5
> controls and ultimately requires the court to
> deny the claim.

(Resp't's Br., Ex. 67, PCR Opinion 21-22.)

This Court finds that the state court reasonably applied the Supreme Court's holding in Strickland and its progeny. Petitioner demonstrated neither that counsel's performance was deficient, nor that the results of the trial would have been different.  Specifically, the New Jersey courts found that Petitioner had failed to show any prejudice as required by Strickland.  Moreover, "[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." United States v. Crews, 445 U.S. 463, 474 (1980); see also Gerstein v. Pugh, 420 U.S. 103, 119 (1975).

This Court finds that the state courts' holdings did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law nor did it result in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding. Therefore, habeas relief is denied on this ground.

### d. Ground Seven

In Ground Seven, Petitioner argues that appellate counsel was ineffective for failing to raise on direct appeal all claims which were raised in his PCR petition. Petitioner further argues that his PCR counsel was ineffective for failing to obtain a certification or affidavit regarding the conflict of interest issue.

The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" Evitts v. Lucey, 469 U.S. 387, 392 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel, Evitts at 396. The ineffective assistance of counsel standard of Strickland, 466 U.S. at 686, applies to a claim that appellate counsel was ineffective. See Smith v. Robbins, 528 U.S. 259, 285 (2000); United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002). Defense counsel has a constitutionally imposed duty to consult with the defendant about whether to appeal when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this

18

particular defendant reasonably demonstrated to counsel that he was interested in appealing." <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 480 (2000).  The term "'consult' convey[s] a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." <u>Flores-Ortega</u> at 478. Petitioner raised the issue of ineffective assistance of appellate counsel in his PCR petition.  The court denied his claim:

> Petitioner argues that appellate counsel was ineffective for failing to raise the issues raised in the instant petition.  The two pronged <u>Strickland</u> standard first requires that counsel's performance fell below an objective standard of reasonableness and, if that is the case, the defense was prejudiced by counsel's action or inaction. <u>Strickland</u>, <u>supra</u>, 466 U.S. at 693.  The second prong requires a finding that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id.</u> at 694.
>
> Counsel argues that had appellate counsel rendered effective assistance, petitioner may have well received a reversal of his conviction on appeal.  However, the Court finds petitioner's arguments absent of a specific factual basis demonstrating that counsel deviated from a professional standard. More problematic is that petitioner has failed to specifically outline how the outcome of the trial would have been more favorable had counsel raised the claims contained herein during the appeal.  This critical flaw obliges the court to rule that the <u>Strickland</u> test has not been satisfied, consequently this claim must therefore be denied.

(Resp't's Br., Ex. 67, PCR Opinion 25-26.)

In this case, the New Jersey courts' adjudication of Petitioner's ineffective assistance of appellate counsel claim was not contrary to, or an unreasonable application of <u>Strickland</u> and other Supreme Court holdings.  Specifically, the PCR court found that Petitioner had not satisfied either prong of <u>Strickland</u>.  He did not provide any factual basis indicating that counsel had deviated from the professional standard and moreover, Petitioner had not shown how the outcome would have been more favorable had counsel raised said claims.  Therefore, Petitioner did not meet the requirements for an ineffective assistance of appellate counsel claim and the petition will be denied on this ground.

With respect to Petitioner's claim of ineffective assistance of PCR counsel, such claim must be dismissed pursuant to 28 U.S.C. § 2254(i), because the "ineffectiveness or incompleteness of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(I).

**2.  Confession**

In this third ground for relief, Petitioner argues that his rights pursuant to <u>State v. A.G.D.</u>, 178 N.J. 56 (2003) were violated when the police failed to inform him prior to questioning that a criminal complaint or arrest warrant had been

filed against him.

Petitioner raised this issue in the state court
suppression hearing conducted before the trial began.

> So the case here, the A.G.D. case, is easily
> distinguished from the case at bar.
>
> I believe what the Supreme Court has said
> here, and it's exactly right, a
> reinforcemement of Miranda.  And what they
> have indicated here is that law enforcement
> cannot bamboozle a defendant...
>
> And I think it's always been the understanding
> of Miranda that, you know, to waive one's
> Miranda rights means that one understands
> their rights.  Okay.  But, more importantly,
> and I think this case points it out, that they
> also understand what they are waiving.  What
> rights are they waiving in terms of what they
> could be facing or what the charge is.
>
> Now the case at bar has two very distinctive
> aspects to it.
>
> Number one, there's no question, and it has
> not been refuted in any way, that Mr. Reid was
> arrested.  That's number one....
>
> Arrest itself certainly is a form of notice.
> You know that you, by virtue of being
> arrested, are being at least charged with a
> crime.
>
> Now, that being said, Detective testified that
> he then, in order to, you know, get him away
> from the neighborhood and whatever, put him in
> the car, gave him Miranda warnings at that
> time and he admitted that he didn't go into
> any specifics with regard to what the, he was
> actually being arrested for, but they went at
> that time to the Prosecutor's Office.
>
> Now, he then further testified, and it has not
> been refuted, that once they get there, they
> start a conversation with him and they tell

21

him that they are investigating a double homicide that had taken place in Sayreville and they, according to the Detective, they also advised him that the arrest was pursuant to that double homicide.

Now, in my opinion, that is certainly sufficient notice to this Defendant as to why, and the circumstances under which he was being held and the magnitude and possibility of those circumstances for the future for him, to indicate that he had given <u>Miranda</u> voluntarily.

Because, clearly, and again it has not been refuted, I have in front of me the statement that was given by this Defendant to the detectives in which it is perfectly clear that he was, in fact, told, number one, that he was being asked to give answers concerning his knowledge of an investigation which is the death of Joong Ahn and Muni Ahn which occurred on November the 1st of 2002.

So, clearly, he is put on notice with regard to the specifics of the investigation, the death of these two persons. And is also told that he is going to be answering questions. And he is asked if he understands and he says yes.

He tells him you were taken into custody earlier in Sayreville and I advised you of your rights?

And he says, "You certainly did."

So that certainly indicates to me that that was done.

"And you understood them?"

"Yes."

And so he tells him, "I'm going to advise you of your rights again. Every time, after every, or when, sir, please answer. You understand it, answer it okay?"

22

I don't quite know what that means.  And then
he goes specifically into each of the rights.

...

"With the rights in mind, do you still, do you
wish to talk to us now?"

And the answer was, "Yeah."

...

Certainly this was classic <u>Miranda</u> Rights.  I
have no reason to believe at that point that
this Defendant did not understand what was
being done.  This was actually the second time
that it was given to him.  He acknowledged
that with, you know, an affirmation.

Number two, I am satisfied that he knew that
he was being questioned with regard to the
death of two people.

Number three, that he had been arrested with
regarding the situation surrounding the death
of these two people.

So, clearly, the new Supreme Court case is not
applicable here....

[T]he Court does find that the <u>Miranda</u>
warnings and the statement given by Mr. Reid
under the circumstances are well within the
law and the Court's [sic] finds them to be
voluntary and that Mr. Reid was put under no
duress and that he certainly had full
knowledge of what he was facing or at least
what the preliminary charges were with regard
to his detainment by the Prosecutor's Office
under those circumstances.

(Resp't's Br., Ex. 88, Suppress. Mot. Hr'g 39:8-45:19, Oct. 22,

2003.)

    The Appellate Division affirmed the trial court's holding.

23

Defendant's second argument on appeal is that
the pretrial judge erred in denying his motion
to suppress the statements he made to police.
Prior to trial, defendant moved to suppress
all of the statements he made to the police,
arguing that his Miranda rights had been
violated. In particular, he asserted that the
officers who questioned him did not advise him
that there was an arrest warrant or a criminal
complaint against him and did not explain to
him why he was being questioned, in violation
of our Supreme Court's holding in State v.
A.G.D., 178 N.J. 56, 66-68 (2003). The motion
judge heard the testimony of the officers who
were involved in questioning defendant,
concluded that defendant's waiver of his
Miranda rights was both knowing and voluntary,
and rejected the assertion that the
then-recent decision in A.G.D., supra, 178
N.J. at 56, required a contrary result. We
agree.

According to the evidence presented at the
suppression hearing, defendant was
apprehended, told that he was under arrest,
placed in handcuffs and transported to the
police station. He was advised of his Miranda
rights both at the time of his arrest and
prior to questioning. He was then advised that
the officers were investigating a double
homicide and asked if he would agree to speak
with them about it. These facts are unlike the
circumstances addressed in A.G.D. In A.G.D.,
the defendant agreed to accompany the officers
to the police station and agreed to speak with
them at a time when he was unaware that there
was already an arrest warrant for him in
connection with the crime. See Id. at 59-61.

Here, when defendant agreed to speak with the
officers, he was already under arrest and was
fully aware of the events that the police
officers were investigating. We therefore find
no merit in his argument that the statements
he gave should have been suppressed or that
the motion judge erred in his analysis.

State v. Reid, 2005 WL 3747511, at * 2 (N.J. Super. Ct.

24

App. Div. February 09, 2006).

At the outset, the Court notes that "[f]ederal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable." Engle v. Isaac, 456 U.S. 107, 120 n. 19, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.[2]  Nor may the Court re-characterize a ground asserted under state law as a federal constitutional claim.[3] "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause."  Johnson v. Rosemeyer, 117 F.3d 104, 110

---

[2]See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n. 7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

[3]See Engle, 456 U.S. at 119-20 & n. 19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n. 10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

(3d Cir. 1997).  And "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim."  Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citation omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).  As such, since it appears that Petitioner relies solely on the state court's alleged misapplication of State v. A.G.D., 178 N.J. 56 (2003), this claim would be dismissed on these grounds alone.

Further, to the extent Petitioner is arguing a violation of his Miranda rights, that claim would also fail.  Pursuant to the Fifth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, "No person ... shall be compelled in any criminal case to be a witness against himself...."  In Miranda v. Arizona, the Supreme Court of the United States held that:

> when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if

> he so desires. Opportunity to exercise these
> rights must be afforded to him throughout the
> interrogation. After such warnings have been
> given, and such opportunity afforded him, the
> individual may knowingly and intelligently
> waive these rights and agree to answer
> questions or make a statement. But unless and
> until such warnings and waiver are
> demonstrated by the prosecution at trial, no
> evidence obtained as a result of interrogation
> can be used against him.

384 U.S. at 478-79 (footnote omitted).

A waiver may be made orally or may be implied from a suspect's conduct. See North Carolina v. Butler, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); United States v. Cruz, 910 F.2d 1072, 1080 (3d Cir. 1990). To introduce into evidence a suspect's statement made during custodial interrogation, the government must establish, by a preponderance of the evidence, a voluntary waiver of Miranda rights. Colorado v. Connelly, 479 U.S. 157, 168-69, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). This is a rule of constitutional dimension, violation of which may justify issuance of a writ of habeas corpus. See generally Dickerson v. United States, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

> Once warnings have been given, the subsequent
> procedure is clear. If the individual
> indicates in any manner, at any time prior to
> or during questioning, that he wishes to
> remain silent, the interrogation must cease.
> At this point he has shown that he intends to
> exercise his Fifth Amendment privilege; any
> statement taken after the person invokes his
> privilege cannot be other than the product of

27

> compulsion, subtle or otherwise.  Without the
> right to cut off questioning, the setting of
> in-custody interrogation operates on the
> individual to overcome free choice in
> producing a statement after the privilege has
> been once invoked.

Miranda, 384 U.S. at 473-74.  A defendant's right to cut off

questioning must be "scrupulously honored."  Michigan v. Mosley,

423 U.S. 96, 103-04, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

"The requirement that Miranda warnings be given does not, of

course, dispense with the voluntariness inquiry.  But ...

'[c]ases in which a defendant can make a colorable argument that

a self-incriminating statement was 'compelled' despite the fact

that the law enforcement authorities adhered to the dictates of

Miranda are rare.'"  Dickerson, 530 U.S. at 444.

"[T]he ultimate issue of 'voluntariness' is a legal question

requiring independent federal determination," and is thus not

subject to the § 2254(d) presumption of correctness.  Miller v.

Fenton, 474 U.S. 104, 109-110, 106 S.Ct. 445, 88 L.Ed.2d 405

(1985).

> The Supreme Court has made clear that a
> statement is involuntary when the suspect's
> "will was overborne in such a way as to render
> his confession the product of coercion."
> Arizona v. Fulminante, 499 U.S. 279, 288, 111
> S.Ct. 1246, 113 L.Ed.2d 302 (1991).  In
> determining whether a statement is voluntary,
> Supreme Court precedent requires consideration
> of "the totality of all the surrounding
> circumstances-both the characteristics of the
> accused and the details of the interrogation."
> Dickerson v. United States, 530 U.S. 428, 434,
> 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)

28

> (quoting Schneckloth v. Bustamonte, 412 U.S.
> 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854
> (1973)).   These surrounding circumstances
> include "not only the crucial element of
> police coercion, Colorado v. Connelly, 479
> U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473
> (1986)," but may also include "the length of
> the interrogation, its location, its
> continuity, the defendant's maturity,
> education, physical condition, and mental
> health." Withrow v. Williams, 507 U.S. 680,
> 693, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993)
> (some internal citations omitted).

Lam v. Kelchner, 304 F.3d 256, 264 (3d Cir. 2002). "[S]ubsidiary questions, such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the Miranda warnings, often require the resolution of conflicting testimony of police and defendant. The law is therefore clear that state-court findings on such matters are conclusive on the habeas court if fairly supported in the record and if the other circumstances enumerated in § 2254(d) are inapplicable." Dickerson, 474 U.S. at 117.

Here, the state courts correctly identified the applicable Supreme Court case law.  The courts properly found that Petitioner was advised on more than one occasion of his Miranda rights and that he agreed to speak to detectives.  Further, the courts properly found that given the totality of the circumstances, Petitioner was put on notice of the crimes for which he was arrested and thereafter questioned.  Petitioner is not entitled to relief on this claim.

29

### 3.  Jury Instructions

In his fourth ground for relief, Petitioner argues that the trial court's instructions to the jury regarding accomplice liability were insufficient because the court did not "enunciate" the shared intent requirement and failed to repeat the charge regarding accomplice liability in the context of the lesser included charges.

Petitioner raised this claim in his PCR petition and the court denied him relief.

> Petitioner alleges that the Court improperly instructed the jury regarding accomplice liability.  However, a close examination of the record indicates the contrary; the Court gave specific and comprehensive charges on accomplice liability memorialized on page 74 of the jury charge.  In support of this finding, the Court notes that the trial court was guided by the principles established in State v. Bielkiewicz, 267 N.J. Super 520 (App. Div.) as he was charging the jury.
>
> Ultimately, this claim is procedurally barred and therefore relief under this claim cannot be granted.

(Resp't's Br., Ex. 67, PCR Opinion 21.)

The Due Process Clause of the Fourteenth Amendment requires proof beyond a reasonable doubt of every fact necessary to constitute the elements of the crime.  See In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In Waddington v. Sauausad, 555 U.S. 179, 129 S.Ct. 823, 172 L.Ed.2d 532 (2009), the Supreme Court outlined the law regarding the

constitutionality of state court instructions:

> Even if there is some ambiguity, inconsistency, or deficiency in the instruction, such an error does not necessarily constitute a due process violation. Rather, the defendant must show both that the instruction was ambiguous and that there was "'a reasonable likelihood'" that the jury applied the instruction in a way that [violated the Constitution]. Estelle, supra, at 72, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (quoting Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 ... (1990)).  In making this determination, the jury instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." Estelle, supra, at 72. Because it is not enough that there is some "slight possibility" that the jury misapplied the instruction, Weeks v. Angelone, 528 U.S. 225, 236, 120 S.Ct. 727, 145 L.Ed.2d 727 ... (2000), the pertinent question "is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,'" Estelle, supra, at 72, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (quoting Cupp, supra, at 147, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368).

Waddington, 129 S.Ct. at 831-832 (2009) (citations and internal quotation marks omitted).

The New Jersey courts' adjudication of these claims was not contrary to, or an unreasonable application of Supreme Court holdings.  The state courts properly found that the instructions given by the trial court did not impermissibly shift any burdens to the defense.  Petitioner has failed to establish that he is entitled to habeas relief on this ground.

31

**4.   Prosecutorial Misconduct**

In his sixth ground, Petitioner argues that he was denied a fair trial because the prosecutor improperly vouched for the credibility of its witnesses and called into question Petitioner's credibility in his closing argument.

It appears that Petitioner raised this claim in his PCR petition, under the theory of ineffective assistance of counsel.

> [A]s mentioned above, this Court finds nothing in the record to show that any sort of prosecutorial misconduct occurred, so even if the Petitioner was not procedurally barred, he would still have no argument to support this claim.   Applying the <u>Strickland</u> standards, trial counsel must show a reasonable likelihood that had counsel objected to the purported improper statements, the outcome of the trial would have been different.   Said statements were not "improper" because New Jersey case law has stated that prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented. <u>State v. Timmendequas</u>, 161 N.J. 515, 587 (1999).   The prosecutor cannot be said to have engaged in comments that are not reasonably related to the scope of the evidence presented being that the State has submitted an overwhelming number of physical evidence and testimony.   Bearing in mind the great leeway given to the prosecutor during summation, trial counsel did not deviate from reasonably professional misconduct [sic], therefore no evidentiary hearing should be granted.

(Resp't's Br., Ex. 67, PCR Opinion 15.)

When reviewing a prosecutor's comments in an opening or closing statement, "[t]he relevant question is whether the

32

prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).  In evaluating the likely effect of improper comments, a court may consider whether the improper comments were invited by or responsive to prior comments by opposing counsel.  Darden, 477 U.S. at 181-82.  Thus, "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant."  Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

Based on a careful review of the entire trial record, this Court finds that the prosecutor's conduct during trial did not have the capacity to so infect the trial with unfairness as to make the resulting conviction a denial of due process.  The trial court record shows no vouching by the prosecutor for the witnesses' testimony that would rise to the level of a constitutional violation.  Therefore, the Court finds no error of constitutional dimension with respect to Petitioner's claim of prosecutorial misconduct.  The state court rulings were not contrary to, and did not involve an unreasonable application of, clearly established federal law; nor was it based on an unreasonable determination of the facts presented in the state

court proceedings.  Accordingly, this ground for habeas relief will be denied.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

## IV. CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue. An appropriate Order follows.

DATED: Nov. 15, 2012

                              s/ Jose L. Linares
                              JOSE L. LINARES
                              United States District Judge